THE STATE v. TURNER S. THORNTON,
Appellant.

Division Two, February 7, 1911.

1. CHILDREN: Father Refusing to Support: Penal Statute: Necessary Food. The words "necessary food" used in the statute (R. S. 1899, sec. 4492) providing that "if any father of an infant child under sixteen years of age, born in lawful wedlock, shall, without lawful excuse, refuse or neglect to provide for such infant necessary food, clothing and lodging, he shall, upon conviction, be punished by imprisonment," etc., mean an article the child actually needs; it is not enough that it be an article classed *per se* as necessary. The statute has in view

the welfare of the child, and its legitimate object is to secure to infants of tender years proper care, that is, to prevent destitution.

2. ———: ———: **No Lack of Necessary Food Shown.** Where defendant's wife had left him and gone to her parents, taking their two infant children, and they were by them provided with all necessary food, clothing and lodging, and were well taken care of, the mother refusing to permit him to have them in his custody and her parents refusing to treat with him about their care, he cannot be convicted for failure to provide the children with necessary food, clothing and lodging, for those things they already have, and the statute was not designed to punish him for failure to provide for them under such circumstances.

Appeal from Boone Circuit Court.—*Hon. N. D. Thurmond,* Judge.

REVERSED.

*McBaine & Clark* and *W. H. Rothwell* for appellant.

(1) No offense against the laws of Missouri is charged by the information, and the proof showed that the appellant was guilty of no crime under the laws of this State. R. S. 1909, secs. 4492 and 4495; R. S. 1899, secs. 1857 and 1861; Laws 1909, p. 450; State v. Koonse, 123 Mo. App. 655; Dalton v. State, 44 S. E. (Ga.) 977; Williams v. State, 55 S. E. (Ga.) 480; Mays v. State, 51 S. E. (Ga.) 503; Ritchie v. Commonwealth, 64 S. W. (Ky.) 979; People v. Reubens, 92 N. Y. Supp. 121; People v. Joyce, 98 N. Y. Supp. 863. (2) The proof on the part of the State showed that whatever offense was committed by the appellant, was committed prior to the time the Act of June 4, 1909, became a law, and that to convict the defendant under the Act of 1909, Sec. 4492, R. S. 1909, would be to construe the Act of 1909 as *ex post facto* in its operation and effect. R. S. 1899, sec. 1861; Bull v. State, 80 Ga. 705; Calder v. Bull, 3 Dall. 386; State v. Kyle,

State v. Thornton.

166 Mo. 287; Kring v. Missouri, 107 U. S. 221; 8 Cyc. 1027; Laws 1909, p. 647, sec. 15, and p. 644, sec. 7; Const. of Mo., art. 4, sec. 36; State ex rel. v. McIntosh, 205 Mo. 616; Whittaker v. Ins. Co., 133 Mo. App. 667; State ex rel. v. Edwards, 136 Mo. 360; Westport v. Smith, 68 Mo. App. 63; 36 Cyc. 1205-1206; State v. Dierkes, 211 Mo. 568. (3) Appellant's refused instructions should have been given by the trial court. R. S. 1909, sec. 4492; also, cases cited under point 1. (4) Instruction A given at the request of the State is erroneous in that it fails to define "lawful excuse." State v. Greenup, 30 Mo. App. 303; State v. Strong, 153 Mo. 540; Carr v. State, 104 Ala. 4; State v. Brinkman, 40 Mo. App. 289; Ayers v. Railroad, 124 Mo. App. 465.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) The information charges the offense in the language of the statute. R. S. 1909, sec. 4492. When the act defines the offense, it is sufficient to charge the offense in the language of the act. State v. Davis, 70 Mo. 464; State v. Newberry, 43 Mo. 432; State v. Adcock, 65 Mo. 590; State v. Watson, 65 Mo. 429; State v. Brinkman, 40 Mo. App. 284; State v. Larger, 45 Mo. 510. (2) It is no defense that the children were not in the custody of the appellant. If he was entitled to their custody, there was a way for him to obtain them. The doors of the court were open to him. The father must maintain the child, even when the child is in the custody of the mother. Viertel v. Viertel, 212 Mo. 562; Keller v. St. Louis, 152 Mo. 596; Myers v. Myers, 91 Mo. App. 151. (3) The evidence was amply sufficient to support the finding of the jury. The jury were the triers of the facts and the weight of evidence and their finding should not be disturbed. State v. Tetrick, 199 Mo. 100; State v. Mathews, 202 Mo. 148. (4) The instructions fully and fairly pre-

sented the law of the case, under the evidence. They were sufficient upon reasonable doubt, and defined the offense, and no legal objection can be made against them. Instruction 6 was more favorable to appellant than he was entitled to. It told the jury that if appellant was prevented from providing support for the children by reason of interference on the part of the mother or father of his wife, they must acquit appellant, and also that appellant was under no legal obligations to furnish money to his wife for the purpose of providing food, clothing and shelter for his children. The law is that a father must support his children, and if he has not their custody, it is his duty to obtain same, if he so desires. (5) Instruction 4 was properly refused. It told the jury that appellant did not have to provide for his children if his wife refused to give them to him. This is not the law. Viertel v. Viertel, supra. Instruction 5 was refused for the reason that it would have told the jury that if the wife retained the children in her own custody and they received sufficient food, clothing and shelter, they should acquit the defendant. This instruction would simply mean that the mother, who had the custody of the infant children, must fail to furnish food, clothing or shelter for the infants before the law would convict appellant; hence, the instruction was properly refused. Appellant did not request the court to instruct upon all the law of the case at the time. (6) Appellant complains, as one ground for his motion for new trial, that he is deprived of his constitutional rights as provided in sections 15 and 30 of article 2 of the Constitution of Missouri, because Sec. 1857, R. S. 1899, was amended by the Act of 1909, p. 450. This prosecution was filed in April, 1910, and the instructions to the court limited the proof between the dates of November 2, 1909, and February 28, 1910. The information was based upon Sec. 4492, R. S. 1899, as amended by the

Laws of 1909. This amendment went into effect August 16, 1909, and one of the infant children was born in October, 1909. The evidence in this prosecution was confined to the time after the younger child was born. There is no evidence in the record as to what occurred, or what appellant did, prior to the birth of the younger child, with the exception that he and his wife separated in January or February, 1909. Bull v. State, 80 Ga. 705. Appellant cannot secure to himself the constitutional rights provided by sections 15 and 30 of article 2 of the Constitution, because the evidence reveals that the whole case was commenced, and evidence therein adduced, after the Act of 1909 had become effective.

FERRISS, J.—Defendant was convicted at the April term, 1910, of the circuit court of Boone county, upon an information which reads as follows:

"L. T. Searcy, prosecuting attorney within and for the county of Boone, in the State of Missouri, informs the court that Turner S. Thornton, on the 2d day of November, 1909, at the said county of Boone, and State of Missouri, being then and there the father of two infant children, born in lawful wedlock, under the age of sixteen years, to-wit: Margarite Thornton, aged two years, and Rudolph Thornton, age five months, feloniously, unlawfully, willfully and without lawful excuse, did refuse and neglect to provide for said infant children necessary food, clothing and lodging, and the said Turner S. Thornton, in the county and State aforesaid, from the second day of November, 1909, to the 28th day of February, 1910, and thence hitherto, did feloniously, unlawfully, willfully and without lawful excuse refuse and neglect to provide necessary food, clothing and lodging for his said infant children aforesaid, against the peace and dignity of the State."

This information is based upon section 4492, Revised Statutes 1909, which provides: "If any mother of any infant child, under the age of sixteen years, or any father of any such infant child, born in or legitimatized by lawful wedlock, or any person who has adopted any such infant child, or any master or mistress of an apprentice, under such age, or other person having the legal care and control of any such infant shall, without lawful excuse, refuse or neglect to provide for such infant or apprentice necessary food, clothing or lodging, or shall unlawfully and purposely assault such infant or apprentice, whereby his life shall be endangered or his health shall have been or shall be likely to be permanently injured, the person so offending shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or by imprisonment in the county jail not exceeding one year, or by a fine of not more than one thousand dollars, or by both such fine and imprisonment."

The following facts are practically conceded:

The defendant, Turner S. Thornton, when about nineteen years old, married Metta Baldwin on October 21, 1907. The couple lived together until February, 1909, when they separated, the wife returning to her father's house, where she continued to live up to the date of the trial; the husband returning to the home of his mother and remaining there. The wife took with her to her father's home the one child which had been born of the union, a girl, Margarite. A second child was born to her in her father's house in September, 1909. The children were supplied by the wife's father, up to the date of the trial, with all necessary food, clothing and lodging, and as testified by the mother, "were well taken care of." From and after the separation in February, 1909, the defendant contributed nothing to the support of the chil-

dren.    Defendant was an average laborer, earning
about one dollar a day.    He on one occasion sent for
the baby, when it was three or four months old, but
was refused.    He made some attempt to meet his
wife and her father to talk over matters with a view
to an arrangement about the children, but the effort
failed.

There was some evidence that defendant and his
mother wished to take the girl to live with him and
his mother.    The evidence for the State shows that
the wife refused to give up the children.    It is evident
from the testimony that the defendant refused to sup-
port the children so long as they were retained in the
custody of the mother.    It is equally clear that the
mother and her father did not propose to recognize
any right in the father except the right to contribute
to the support of the children, the mother to retain the
exclusive custody and control.

Whether this conviction can be sustained depends
upon the construction of section 4492, set out above.
If, as contended by the defendant, it is a crime to
fail to provide food, clothing and lodging, only when
they are actually lacking, and the failure to so provide
shall endanger the life or health of the infant child,
then it is clear that the evidence does not sustain the
charge.    The State proved that the children were am-
ply supplied with food, clothing and lodging by the
wife's father, who seems to have been in full sympathy
with his daughter's purpose to keep the children in
his household, and entirely away from their father.
If, on the other hand, as contended for by the State,
it is a crime under this statute for the father to refuse
to supply food, clothing and lodging, regardless of
whether they are supplied from other sources, and
regardless of whether life or health is endangered, if
mere failure to furnish support is a crime, then the

evidence sustains the charge. The defendant admits that he did not support the children.

The statute penalizes the refusal of the father to supply *necessary* food, etc. Under the law pertaining to necessaries, a necessary article is one which the party actually needs. It is not enough to show that the article is *per se* classed as necessary, such as food and clothing. It must also be actually needed at the time.

The law will imply and enforce a contract by an infant to pay for necessaries out of his estate. This because "otherwise he might suffer for the want of them." [Parsons on Contracts (9 Ed.), p. 355.] Or, as another writer puts it, "based on the necessity of their situation." [Tyler on Infancy, p. 107.] The fundamental principle of the law of infancy is this: It is essential to the welfare of the State that infants be fed, clothed, lodged and educated; and also that the State shall not be burdened with their care. So long as infants are properly cared for, the State is not interested as to the source from whence the supplies come. If an infant has an estate, the law will compel him to support himself out of his estate, *provided he is not otherwise supplied;* but the law will not impose upon his estate a contract to pay for articles which he does not in point of fact need, because he is already supplied, although the articles may be *per se* regarded as necessary to his proper nurture. So with regard to the custody of minor children, this belongs primarily to the father, but if the welfare of the child requires it, the court will award the custody to the mother; the primary consideration being the good of the child.

We apprehend that the enactment of the penal statute in question was inspired by the same idea, *namely*, the welfare of the child, and upon the grounds of public policy adverted to above.

The Legislature did not enact this law for the purpose of punishing parents for failure to do their duty as such. Such a purpose would smack too strongly of paternal government. The only legitimate object of the statute is to secure to infants, who are in future to become citizens of the State, proper care; such care as is necessary to protect their lives and health. In other words, to prevent destitution.

It follows from the foregoing that if infant children are receiving necessary food, clothing and lodging from any source, there is no occasion for the State to interfere by penal law or otherwise.

Construing section 4492 in the light of the above reasoning, and as applied to the facts in this case, it denounces a penalty for refusal or neglect to supply an infant child with such food, clothing and lodging as it actually needs. Upon the showing made by the evidence for the State, the instruction (No. 1) asked by the defendant at the close of the State's case should have been given.

Cases analogous to this have been passed upon in Georgia and Kentucky.

The statute construed by the Supreme Court of Georgia is as follows: "If any father shall willfully and voluntarily abandon his child, leaving it in a dependent and destitute condition, he shall be guilty of a misdemeanor." [Code St. of Ga., vol. 3, sec. 114.] The case of Dalton v. State, 118 Ga. 196, reversed a conviction under this statute. The court said: "The evidence adduced on the trial showed that the father was willing for the wife to leave him and return to her relatives. The child, which she took with her, was between four and five years of age, and was, of course, dependent. The evidence, however, does not disclose that the child was destitute at the time of the abandonment or had even become destitute up to the time of the trial. So the case turns upon the question whether

the father is guilty if he fails to provide for his child after the separation, even though the child may be abundantly supplied with all the necessaries of life. While it is true that a father is under a moral and legal obligation to support his minor child, it is not also true that, if he fails in his duty, he may be convicted under the above section of the Code although the child is fully provided for by others. The father cannot be convicted unless it be shown that the child was not only dependent, but in a destitute condition. If it is not destitute, but is amply supplied with all necessaries, the father cannot be convicted. It is true he may have violated his moral and legal obligations in abandoning the child at all; but as criminal statutes must be construed strictly, we are constrained to give this statute this interpretation.''

The Kentucky statute provides: ''A parent or other person having the care or custody, for nurture or education, of a child under six years of age, who willfully deserts the child in a manner showing a reckless disregard to life or health, and with the intention wholly to abandon it, is punishable by imprisonment in the penitentiary for not more than three years.'' [Sec. 329, Stat. Ky. 1894.] Passing upon this statute in Richie v. Commonwealth, 44 S. W. 979, the Supreme Court of Kentucky found the fact to be that the parents had separated, leaving one child, about one year old, in the care and custody of its mother and grandmother, who lived together, and that after the separation it was carefully provided for by them, but that the accused had contributed nothing to its support. The court said: ''Certainly it cannot be claimed that leaving a child less than one year old in the custody and care of its own mother shows a reckless disregard either to its life or health. The trial judge seems to have proceeded upon the idea that the mere failure to provide for the support of a child under six years of

age rendered the defendant liable to the penalty denounced by the statute. There is no testimony in the record conducing to show the guilt of the accused, and we think the circuit judge erred in not directing the jury to find the defendant not guilty."

The views above expressed by us dispose of the case, and the discussion of other questions raised is unnecessary. The judgment is reversed, and the defendant ordered to be discharged. *Kennish, P. J.,* and *Brown, J.,* concur.