[Crim. No. 272.  Third Appellate District.—March 18, 1915.]

## THE PEOPLE, Respondent, v. J. C. SELBY, Appellant.

CRIMINAL LAW—ABANDONMENT OF WIFE—PROSECUTION UNDER SECTION 270a PENAL CODE.—The evidence was insufficient to sustain a conviction under an information charging the defendant with the crime of unlawfully abandoning and leaving his wife in a destitute condition and failing to provide for her support, as defined by section 270a of the Penal Code, where it appeared by the uncontradicted evidence that immediately upon the separation of the defendant and his wife, which was the result of their mutual agreement, the latter was received into the family of a relative and there taken care of, and that she had credit at a general merchandising store where she was privileged to obtain merchandise on her own credit.

ID.—SECTION 270A PENAL CODE—CONSTRUCTION OF.—Section 270a of the Penal Code was obviously intended to cover those cases where the husband, without just cause, has willfully abandoned his wife and left her without means or resources and in a condition of absolute want—a condition in which she is unable to procure for herself the ordinary or common necessaries essential to the sustenance of life.

ID.—SUPPORT OF WIFE—DUTY OF HUSBAND—ABANDONMENT.—While it is the duty of the husband to furnish his wife with the necessaries of life, it is no crime for him not to do so if she is not actually in want of them, even though he might have abandoned her within the meaning of the statute.

ID.—WHEN ABANDONMENT NOT SHOWN.—In such a case where the uncontradicted evidence shows that the separation was the result of the mutual agreement of the parties, there was no abandonment by the defendant of his wife within the meaning of section 270a of the Penal Code; nor was any duress or coercion practiced by the defendant to bring about the separation from the fact that he insisted upon a separation because of his wife's confession that she had sustained immoral relations with other men, notwithstanding she subsequently said that her confession was a pure invention.

APPEAL from a judgment of the Superior Court of Modoc County.   C. A. Raker, Judge.

The facts are stated in the opinion of the court.

Grover C. Julian, and A. F. Shartel, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—By information filed in the superior court of Modoc County, the defendant was accused of the crime of unlawfully abandoning and leaving his wife in a destitute condition and failing to provide for her support, as defined by section 270a of the Penal Code.   Upon being tried for said offense before a jury, he was convicted thereof and thereafter, and within legal time, the court sentenced him to imprisonment in the state prison at Folsom for the term of two years.

This appeal is prosecuted by the defendant from the judgment and is supported by a transcript of the testimony.

Section 270a of the Penal Code reads: "Every husband having sufficient ability to provide for his wife's support, or who is able to earn the means of such wife's support, who will-

fully abandons and leaves his wife in a destitute condition, or who refuses or neglects to provide such wife with necessary food, clothing, shelter or medical attendance, unless by her misconduct he was justified in abandoning her, is punishable by imprisonment in the state prison, or in the county jail, not exceeding two years, or by fine not exceeding one thousand dollars, or by both.''

The important facts are undisputed and may thus be briefly stated: The defendant and his wife had been married for a period of nearly four years at the time of the trial of this case. To them, during that time, were born two children, the younger still nursing at its mother's breast when the trial took place.

It appears that, a short time before his arrest, the defendant conceived a suspicion that his wife was unfaithful to him —that she was holding clandestine meetings with other men and sustaining immoral relations with them. He finally revealed to his wife his suspicions and directly accused her of misconduct with other men. She admitted to him the truth of the accusation, confessing that two different men had, on divers occasions, had sexual relations with her. This occurred on the night of the 27th of March, 1914. On the following morning the wife contradicted her story of wrongdoing, declaring to her husband that there was no truth in it and explaining that, he having been so persistent in his asseverations of her guilt, she merely told him the story to pacify him for the time. He, however, insisted that she had done wrong and persisted in expressing the belief that her confession of the night before was founded upon the truth. He then persuaded her to accompany him to the office of the justice of the peace of the town of Alturas, where they then and had during the major part of their married life resided, and, upon appearing before that officer, related to the latter their domestic differences and stated that his wife was in need of medical treatment and that she ought to be committed to a hospital. The justice attempted to effect a reconciliation between the parties, but without avail. Both positively stated in the presence of that officer that they would not live together in the future.

The couple then departed together from the office of the justice of the peace and immediately repaired to the office of the district attorney of Modoc County. There they met

the district attorney and to him related the story of their
domestic difficulties. The testimony of that officer was not
contradicted in any important particular, and, therefore, in
his language may best be told what transpired between the
parties at his office: "Mr. Selby was relating quite a good
deal of their difficulties to me, and Mrs. Selby was also adding
words of explanation here and there, and they were giving
me quite a detailed account of the troubles they had been
having, and one thing and another, and it appeared to me
that their affairs had reached a state where they could no
longer live together with any satisfaction to each other; and
I made a remark to that effect to them. My remembrance
is that Mrs. Selby was the first to speak, and she said in sub-
stance that she did not expect to ever live with Mr. Selby
again, and Mr. Selby, as I remember it, acquiesced to this
statement, that their affairs had reached a state where they
could be no longer together with any satisfaction to each
other as husband and wife; and that they might as well sep-
arate. This was merely the substance of it. I would not
attempt to repeat a *verbatim* account of it. I then made the
remark to Mr. Selby that he would have to make some provi-
sion for Mrs. Selby and the children. First I asked if they
had any property; they said no. I then remarked to Mr.
Selby that he would have to make some provision for Mrs.
Selby and the children; and then there was some considerable
discussion followed; and it was finally agreed that Mr. Selby
should pay Mrs. Selby fifteen dollars a month, and my remem-
brance is that I turned to Mrs. Selby and asked her if that
was satisfactory to her; she expressed herself as being satis-
fied; and Mr. Selby then attempted to interpose a condition
that Mrs. Selby should keep away from the Ed. Dorris home.
I told him that as long as they agreed to separate, and he was
going his way without restrictions, he had no right to inter-
pose any conditions upon her; that the Dorrises were relatives
of hers, and it was but natural that she should want to go to
those interested in her, and it was a restriction he had no
right to interpose, and he urged the point no further."

The defendant and his wife, after having made the agree-
ment above mentioned, departed from the district attorney's
office, the latter going to her mother's home, and later to the
home of her uncle, a Mr. Dorris, with whose family she lived
up to the time of the trial.

It appears, however, that before she left her mother's home, the defendant called on her and stated that he intended to sell their household goods. He then went to their former home and she followed a short time thereafter, her purpose in doing so being to secure possession of certain articles of clothing belonging to her and the children. Upon her arrival at their home, a quarrel between her and the defendant ensued. There is some conflict between the defendant and his wife with respect to what transpired between them at that time. She testified that, after placing certain articles of her own in a trunk, he ejected her from the house and locked the doors thereto and thus prevented her from again entering the house and obtaining what belonged to her. The defendant testified that the reason he did not desire that she should remain in the house was because he had often heard her threaten self-destruction, that he knew that there were several different kinds of poison in the house and that, although he believed she was merely "bluffing" when threatening to take her own life, he nevertheless felt some apprehension that she might do so if she found the poison. He further testified that, after he had put her out of the house, she broke a window and through it re-entered, after which he again ejected her and again locked the doors. He said that he did not prevent her from obtaining possession of her own wearing apparel.

Nothing further occurred between the parties until the thirtieth day of March, 1914—two days after the agreement of separation was entered into between them—when the defendant was arrested upon the charge of which he was convicted in this case and placed in the county jail and thus in the custody of the sheriff of the county, and there remained up to the time of the trial, and, so far as we are advised to the contrary, is still in said jail. His wife and children, during that time, lived at the home of her uncle, the Mr. Dorris heretofore referred to.

At the time of his arrest, the defendant was without means. Mrs. Selby testified that, in her opinion, he could not have had in his possession an amount of money exceeding one dollar. The defendant testified that all the money he had at that time was the sum of twenty-five cents. Both the defendant and his wife testified that he owned no property of any kind. It appears, however, that, prior to his arrest and

incarceration in the county jail on the present charge, his credit was good at a general merchandising store owned and conducted by a Mr. Thomas, who testified that the defendant had maintained an account with him and that Mrs. Selby often came to the store and bought various articles of merchandise on his account. He further said that the arrangement whereby the defendant's wife was enabled to purchase goods at his store on her husband's credit had never been revoked, although (he continued to say) he would not let her have merchandise on her husband's account so long as he remained in jail and was thus deprived of the opportunity to earn money with which to pay his debts. He declared, however, that Mrs. Selby could, notwithstanding that her husband was in jail, secure merchandise at his store on her own account.

The defendant testified that at the time Mrs. Selby left their home there was "a good supply of provisions in that house" and "is at present, if they have not been removed," and that she could have gone to the house, if she had desired to. Mrs. Selby, although giving testimony in rebuttal, did not contradict this statement.

It may be added that the testimony shows without contradiction that the defendant, who was a common laborer, had always been a hard-working, industrious man and had, prior to his arrest, provided well for his family.

The foregoing embraces an accurate statement of the facts which were established at the trial and upon which the jury founded their verdict of conviction in this case.

Our conclusion is that the verdict is wholly without justification under the proofs and that to sustain and execute it would result in manifest injustice.

The statute upon which the information is based was obviously intended to cover those cases where the husband, without just cause, has willfully abandoned his wife and left her without means or resources and in a condition of absolute want—a condition in which she is unable to procure for herself the ordinary or common necessaries essential to the sustenance of life. This is, indeed, the natural meaning of the word "destitute" or "destitution" and the sense in which it is undoubtedly used in the statute. The uncontradicted evidence clearly shows that the wife in this case was not left in a "destitute condition" by the defendant. Imme-

diately upon the separation between herself and husband taking place, she was received into the family of a relative and there taken care of. Moreover, she had credit at a general merchandising store, where, according to the owner of the store, she was privileged to obtain merchandise on her own credit.

She did not, nor did any other witness, testify that, after the separation, she was at any time deprived of the necessaries of life. The only proof upon that matter was that the defendant did not provide those necessaries. While it was, of course, his duty to furnish her with such necessaries, it was no crime for him not to do so if she was not actually in want of them even though he might have abandoned her within the meaning of the statute. (See *State* v. *Thornton*, 232 Mo. 298, [32 L. R. A. (N. S.) 841, 844, 134 S. W. 519].)

But the above is not the only important consideration which stamps the verdict as an unjustifiable and erroneous conclusion from the evidence. We fail to see wherein the act of the defendant constituted an abandonment of his wife within the meaning of section 270a of the Penal Code. The uncontradicted evidence shows that the separation was the result of the mutual agreement of the parties. So far as the record discloses, there was no duress or coercion practiced by the defendant to bring about the separation. He evidently believed his wife's confession that she had sustained immoral relations with other men, notwithstanding that she subsequently asseverated that the story was a pure invention. Because of that confession he insisted upon a separation, and if he still honestly believed, after her recantation of her confession, that she had been unfaithful in her marital obligations, he had the legal, even if not the moral, right to insist upon a separation, and such insistence would not of itself involve duress or coercion. But she, too, declared that she could and would no longer live with the defendant, and was, equally with the latter, not only agreeable to the fact and act of separation but also to the terms of the agreement. In brief, the agreement to separate was the culmination of the mutual, free, and voluntary acts of both parties. Under these circumstances, there could be no *abandonment* of the wife by the defendant.

There can be no claim that the wife was in any manner or degree misled as to the defendant's financial condition before

and at the time the agreement to separate was made. She knew·and, indeed, testified that she knew, when the agreement was entered into, that the defendant had neither money nor property of any other character. She, therefore, knew, when she made the agreement to separate upon the terms indicated, that the defendant, in order to carry out his part of the agreement,·would be required to secure employment whereby he would be enabled to earn money. It was, doubtless, for this reason that no particular time for the payment of the initial and other monthly installments which he was to make to her was specified or agreed upon in the agreement.

Thus it clearly appears that she entered into the agreement freely and voluntarily and with full and complete knowledge of the defendant's impecunious condition. And, so far as anything to the contrary is shown by this record, the defendant entered into the agreement in good faith and with the intention of carrying it out, if given a reasonable opportunity to do so. This was denied him, for, as has been shown, on the third day after the agreement was made, he was placed under arrest upon the charge of which he here stands convicted.

At all events, we are firmly of the conviction that, under the conceded facts, the defendant neither abandoned his wife nor left her in a destitute condition within the true meaning or contemplation of section 270a of the Penal Code.

The judgment is reversed.

Chipman, P. J., and Burnett, J., concurred.