## STATE OF MISSOURI, Respondent, v. EDMUND A. BEIMS, Appellant.

St. Louis Court of Appeals. Opinion Filed June 12, 1923.

1. **CRIMINAL LAW: Failure to Provide for Child: To Sustain Conviction Not Necessary for State to Show Failure, etc. Endangered Child's Life.** Under Laws of 1921, pp. 281, 282, making it an offense for any man or woman without good cause to fail, neglect or refuse to provide the necessary food, clothing or lodging for his or her child or children born in or out of wedlock under the age of sixteen years, it is not necessary, in order to sustain a conviction, for the State to show that the failure, neglect or refusal to provide necessary food, clothing or lodging endanger the child's life, or permanently injure its health, and the mere fact alone that the child was being supported and care for by friends, relatives, or charitable institutions, would not excuse any man or woman from discharging the duty imposed upon them by law.

2. ————: ————: **Elements of Offense: Evidence: To Sustain Conviction State Must Prove That Failure, etc., was Without Good Cause.** In order to sustain a conviction in a prosecution under Laws of 1921, pp. 281, 282, the burden is on the State to establish every element of the offense charged, and the State must show the facts and circumstances which would tend to prove that the failure, neglect, or refusal to provide the necessary food, clothing, or lodging was "without good cause."

3. ———: ———: ———: ———: Insufficient to Sustain Conviction.
In a prosecution for failure to support child, etc., based on Laws
of 1921, pp. 281, 282, evidence reviewed and *held* insufficient to
sustain a conviction.

4. ———: ———: Statute: Cannot Be Extended by Implication.
Laws of 1921, pp. 281, 282, being a criminal statute, its provisions
cannot be extended by implication.
DAUES, J., dissenting, being of opinion that the judgment of con-
viction should be affirmed.

Appeal from the St. Louis Court of Criminal Correc-
tion.—*Hon. Calvin N. Miller*, Judge.

REVERSED.

*Julius T. Muench* for appellant.

(1)  In the absence of a showing that, at the time
alleged in the information, the defendant had the cus-
tody, care or control of his minor child, he should not
have been convicted.  S. A. 1921, pp. 281-282, sec. 3274.
(2)  The burden was on the State to show, beyond a
reasonable doubt, absence of good cause on the defend-
ant's part for his alleged failure to support his child.
This included a showing that he was financially able
to furnish the support or that he brought about inability
on his part to furnish it, with criminal intent.  The State
having failed to establish this essential element of the
offense charged, the defendant should have been ac-
quitted.  S. A. 1921, pp. 281-282, sec. 3274; State v.
Greenup, 30 Mo. App. 299; State v. Broyer, 144 Mo. App.
393; State v. Linck, 68 Mo. App. 161; State v. Lang-
ley, 248 Mo. 545; State v. Neuroth, 181 S. W. 1061.  (3)
Inability to furnish the support, because of failure to
secure employment, is a valid defense to a prosecution
for failure to support a minor child.  State v. Broyer,
supra.  A father cannot lawfully be convicted of failure
to support his minor child where the evidence shows that
on date on which the offense is alleged to have been
committed, the child was amply supplied with food, cloth-

ing and lodging. State v. Thornton, 232 Mo. 299; State v. Tietz, 186 Mo. App. 672.

*A. W. Schweitzer,* Prosecuting Attorney.

*E. W. Foristel* and *O. J. Mudd* on behalf of the State.

(1)  The decision in State v. Thornton, 232 Mo., construing a statute since repealed, is not of controlling force upon this court in construing the Act of 1921. State ex rel. Schullen v. Robertson, 187 S. W. 37; State ex rel. Lumber Co. v. Robertson, 197 S. W. 79, 82; State ex rel. v. Reynolds, 216 S. W. 773, 775; State ex rel. v. Ellison, 216 S. W. 967, 969-70.  (2)  A statute must be construed so as to give effect to it and make it operative and so that the Legislature shall not have done a vain and useless thing in its enactment, whenever such construction is possible consistently with the language of the act.  Perkins v. Long, 275 Mo. 169; State ex rel. v. Dunn, 277 Mo. 38, 45; Ins. Co. v. Wickham, 281 Mo. 300, 315; 2 Southerland on  Stat. Constr., p. 909, Id., p. 912.

NIPPER, C.—Defendant was proceeded against by information filed by the Prosecuting Attorney and lodged in the St. Louis Court of Criminal Correction.  He is charged with failing and refusing to provide for his lawful child under the age of sixteen years, to-wit, aged one year and nine months.  The statute under which this proceeding is had may be found in the Laws of 1921, pages 281 and 282, which section, in so far as it has any pertinent application here, is as follows:

"If any man or woman shall without good cause, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .fail, neglect or refuse to provide the necessary food, clothing or lodging for his or her child or children, born in or out of wedlock, under the age of sixteen years . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . then such person shall . . . . . . . . . . . . . . . . . . . . . . . . . . . be punished by imprisonment," etc.

Defendant, and his wife who prior to her marriage was Mildred Bleyer, were married on August 1, 1918. About ten or eleven days thereafter, the defendant, who had been drafted, entered the service, and remained until the day before Christmas, 1918. After defendant's return from the army, he and his wife lived together in a house belonging to the wife's father, on Washington avenue, in the city of St. Louis. Defendant and his wife, the wife's father, her grandmother, and her father's brother made up the family which lived in this home. About the 20th of October, 1920, defendant went to Kansas City, and on January 14, 1921, defendant's wife obtained a divorce from him. The care and custody of the child was awarded to the mother, but no provision was made for its support.

The divorced wife of defendant testified that, for several months prior to the date of the trial defendant had contributed very little to the child's support—"no more than about $10 per month before he left on October 20, 1920." After that time, and up to August 12, 1921, he had sent only $10. She stated she did not know whether or not defendant was employed. On cross-examination she testified that she was awarded the custody of the child by agreement with the defendant; that this agreement was entered into with defendant by her father, who is a member of the Bar of the city of St. Louis. She testified that she was living with her father at the time of the divorce, and had been living with him ever since; that her father owned the home in which they lived, and that the child is being provided for there; "it is suffering no want, it is not in any way neglected, and is being properly taken care of in every way."

Mrs. Beim's father testified that, since October, 1920, both the child and its mother had been residing with him and his mother; that the daughter had been providing for the child out of an allowance which he gave her; that the defendant had not contributed anything to the support of the child in ten months. After the defendant's return from the army he did not know whether

he had ever been employed, but defendant had informed him that he had. This was all the evidence offered on the part of the State.

Counsel for the defendant asked that he be discharged, but the court overruled this motion.

Defendant testified that he was twenty-four years old; that he had left the home in which he and his wife had been living on October 20, 1920, and had been in Kansas City from that time until the time the decree of divorce was granted. He testified that, until the 12th of August, 1921, he had been selling "check protectors," but had made very little above his expenses and the necessaries of life. He went to work for this company in January, 1921. After he returned from the army, and until he left for Kansas City on October 20, 1920, he and his wife had lived at the home of her father, as stated.

On cross-examination defendant stated he was six feet one inch tall, and weighed about one hundred and seventy-three pounds, and was in perfect health; that his father is President of the Claes & Lehnbeuter Manufacturing Company. He says he sent $10 to the child after he left, and that prior to the divorce he had also sent a check to the wife for $50. This child was born on October 21, 1919. The offense for which defendant was tried was alleged to have been committed on August 12, 1921. From October, 1919, to May, 1920, he stated he was making $150 a month, and, while he contributed to the support of the child, he could not state definitely just how much. He also testified that he had had a talk with his wife's father, Mr. Bleyer, about the 12th of August, with respect to the support of this child. Mr. Bleyer, he said, wanted $50 a month, and $350 back pay, and stated to the defendant that it was immaterial whether he paid or not, as he would rather send him to the penitentiary than to have the money. At the time he left, the child was being taken care of, all of its wants were looked after and provided for when he lived there and when he last heard of the child, and that he had

15—211 M. A.

made inquiries as to its condition and how it was being provided for.

In rebuttal, Mrs. Beims testified that defendant never spent more than $10 in any one month for the child when he was making $150 a month, and that the $50 was sent her by defendant in October or November, 1920; and further stated: "I am the only child of my father, and am in comfortable circumstances, living in a good home; and the child is provided with every possible comfort."

It further appears from defendant's testmony that when he began selling the check protectors his mother advanced him $1,000. He purchased twenty-seven, and had $300 left. During the eight months in which he was engaged in selling these check protectors he lost money, and as soon as he sold what he had purchased he quit and came back to St. Louis. This was in August, 1921. It was at this time that he discussed with his father-in-law, Mr. Bleyer, the question of contributing to the support of his child, and was told by Mr. Bleyer that he must contribute $50 a month, and pay $350 back pay, or he would be sent "over the road." At that time he says he had no money, no job, nor any bank account. After he returned from the army, at the suggestion of his wife and her father, he went to live in their home, which was a nine-room, well furnished house. The father of his former wife is an attorney-at-law, and he attended to the legal business in connection with the divorce and arrangements concerning alimony. Defendant testified that he did not know at the time he was discussing the question of support for the child that any prosecution had been instituted against him. Prior to the time he left his wife, and after his return from the army, he was earning $150 a month, and during all the time he was at this home he says he contributed to the support of the wife and child, although he did not remember the exact or definite amount given in any one month. He also testified that he had written to his wife and told her that any time the child was sick or he could do anything, he would be only too glad to do it.

Defendant was found guilty, and his punishment fixed at one year in the workhouse.

The question before us for our consideration on this appeal is, will this record sustain a conviction for the offense described in the statute. A very similar question was before our Supreme Court in State v. Thornton, 232 Mo. 298, 134 S. W. 519. The statute under which the proceeding was there had was as follows:

"If any .............................................
father of any such infant child, born in or legitimatized by lawful wedlock ........................................
shall, without lawful excuse, refuse or neglect to provide for such infant ...........................................
necessary food, clothing or lodging, or shall unlawfully and purposely assault such infant ...............................
whereby his life shall be endangered or his health shall have been or shall be likely to be permanently injured, the person so offending shall, upon conviction, be punished by imprisonment," etc.

In the Thornton case the defendant married on October 21, 1907, and lived with his wife until February, 1909, when they separated. The wife went to her father's house, where she lived until the date of the trial. The wife took with her the one child which had been born of the marriage. Later there was a second child born at her father's house. The children were supplied by the wife's father up to the date of the trial with all necessary food, clothing, and lodging; and it appeared in that case, as here, from the mother's testimony, that the children were well taken care of. The court held that a conviction under the statute last quoted could not be sustained. The court stated, l. c. 305:

"The statute penalizes the refusal of the father to supply *necessary* food, etc. Under the law pertaining to necessaries, a necessary article is one which the party actually needs. It is not enough to show that the article is *per se* classed as necessary, such as food and clothing. It must also be actually need at the time."

The effect of the holding in State v. Thornton, supra, is that a conviction cannot be had under such circum-

stances if, at the time the alleged offense was committed the child or children are being well provided for by the wife or her father. Our Supreme Court cites two decisions in that opinion as sustaining the views therein expressed, one, Dalton v. State, 118 Ga. 196, the other, Richie v. Commonwealth, 64 S. W. 979, the last case being an opinion of the Court of Appeals of Kentucky. The Kentucky case was based upon a statute which imposed a penalty against a parent who deserted a child "in a manner showing reckless diregard of life or health." That statute has been changed since that time so that the statute now provides a punishment for a parent who shall leave, desert, or abandon his child under the age of sixteen years, leaving it "in destitute or indigent circumstances." Under that statute it has been held by the Kentucky Court of Appeals which decided the Richie case that, the mere fact that friends or relatives may be supporting a child and providing it with all the necessaries of life, will afford no defense to a father charged with a violation of that statute. [Commonwealth v. Donovan, 187 Ky. 779, 220 S. W. 1081; Ragsdale v. Commonwealth, 195 Ky. 750, 243 S. W. 1056.] Other States which have a statute very similar to the Kentucky statute have construed such statutes along the same lines as was done in the Kentucky cases above cited. [See Hunter v. State (Okla.), 134 Pac. 1134; State v. Bess (Utah), 137 Pac. 829; State v. Waller, 90 Kans. 829.]

It will be noted, however, by reference to the section of the statute under which the prosecution was had in the Thornton case, that such statute is materially different from the one under which this prosecution is had. Under the statute as it existed at the time the Thornton case was tried, it was necessary for the State to show (1) that the father had refused or neglected to provide for such infant the necessary food, clothing, or lodging; (2) such refusal or neglect must have been without lawful excuse; (3) such refusal or neglect to provide such food, clothing, or lodging must have endangered the child's life or permanently injured its health, or

such as was likely to permanently injure its health. Under the present statute, the requirement as to the result of the failure to provide need not necessarily exist in order to sustain a conviction, therefore clearly distinguishing the law as applied in the Thornton case from the law as applicable to the facts necessary to sustain a conviction under the present statute.

In State v. Langley, 248 Mo. 545, 154 S. W. 713, the Supreme Court, in discussing what was necessary to sustain a conviction under the statute as it existed at the time the prosecution was had in the Thornton case, deals with that matter in the following language:

"It will be noticed that in order for the father to be guilty of a violation of this statute, he must, first, refuse or neglect to provide the child with necessary food, clothing or lodging; second, such refusal or neglect must be without lawful excuse; third, the refusal or neglect to so provide must endanger the child's life or permanently injure his health, or be such as shall be likely to permanently injure the child's health. The first and second of these statutory requirements must exist at the same time, and the third must directly result therefrom.

"In determining the sufficiency of evidence to convict of any offense, it first becomes necessary to inquire and determine what facts must be proved by the State to sustain a conviction. It will not be questioned but that the State in this case is required to prove the first and third requirements above enumerated; but as to the second requirement, viz., that the act of refusal or neglect must be committed without lawful excuse, some question may arise.

"A careful review of the record fails to disclose any evidence tending to show absence of 'lawful excuse.' There is no evidence as to the financial ability of the defendant, or as to whether by the wages he received for his labor, or by other means in his possession or within his control, he was able to furnish more than the fifteen dollars per month which he did furnish up to

about the time his wife and children went to Illinois. It is not the purpose of the statute to place a penalty upon the inability of the parent. There could be no criminal intent in a case of this character when the accused does not possess the ability to do that which he omits to do, unless he, with criminal intent, brings about or aids in bringing about his inability. According to the defendant's testimony, he rendered all the aid he was able to render up to the time his children went to Illinois, where they were to have a home, and he had no knowledge or information concerning the changed condition until he returned to Hannibal. The record is silent as to what he did, or what attitude he took, with reference to their support upon his return. The evidence shows that he made no secret of his whereabouts in St. Joseph, and it is not shown that he went to St. Joseph secretly, or for the purpose of shirking responsibility for the support of his children.

"The burden is upon the State to establish every constituent element of the offense charged, and this burden remains with the State throughout the trial. [State v. Hardelein, 169 Mo. 579.] After a careful review of the authorities, we have come to the conclusion that in proving a charge under the statute in question, it was incumbent upon the State to show facts and circumstances which would tend to prove that the refusal or neglect with which defendant is charged was 'without lawful excuse.'"

Thus, under the present statute, it is not necessary, in order to sustain a conviction, for the State to show that the failure, neglect, or refusal to provide necessary food, clothing, or lodging, must endanger the child's life or permanently injure its health, but if any man or woman shall "without good cause" fail, neglect, or refuse to provide the necessary food, clothing, or lodging for his or her child or children under the age of sixteen years, then such person is guilty, even though such failure did not endanger the child's life, permanently injure its health, or be such as would likely per-

manently injure its health; and the mere fact alone that the child was being supported and cared for by friends, relatives, or charitable institutions, would not excuse any man or woman from discharging the duty imposed upon them by law. Such is not the intent or spirit of the law. This pronouncement is supported by all the authorities above cited from other jurisdictions, and is in accord with the very reason prompting the enactment of this statute.

But in order to sustain a conviction, as stated in the Langley case above cited, the burden is on the State to establish every element of the offense charged, and the State must show the facts and circumstances which would tend to prove that the failure, neglect, or refusal to provide the necessary food, clothing, or lodging was "without good cause."

As to the evidence offered by the State, there was no effort to show the absence of good cause, and if it was shown at all in this case, it was shown by the facts and circumstances brought out by the defense. Soon after the defendant left his wife, she obtained a divorce from him. She was living with her father at the time he left, where both she and the child were well cared for. He was a young man about twenty-three years of age. He started out in a business venture for himself. His mother furnished him $1,000 with which to embark upon his business career as a salesman. He followed this business for about eight months, lost the one thousand dollars, and as soon as he could got free from the business he came back to St. Louis. He sent his wife about $60 in the meantime. He wrote her letters inquiring about the condition of the child, and informed her that any time he could do anything for the child he would be glad to do so. He made no money above his actual expenses and the necessaries of life,—in fact he lost money continually. The fact that his father may have possessed some wealth would be no reason why the son should be convicted. He knew when he left that his child was being well provided for in a good home. He had no

means by which he could add to the comforts and happiness of the child. When he discovered his business venture was a failure and returned to St. Louis, he discussed with his former wife's father the question of contributing to the support of the child. He was then informed that he must pay $50 a month and $350 back pay, and that he could choose between that alternative and going "over the road." He did not possess the ability to do so at that time.

As stated in the Langley case, there could be no criminal intent in a case of this character, when the accused does not possess the ability to do that which he omits to do, unless he, with criminal intent, brings about or aids in bringing about his inability. It does not follow that in every case where a father has been remiss in the performance of his legal obligation to support his minor children he may be convicted of a criminal offense. [State v. Anderson, 189 Mo. App. 611, 175 S. W. 259.]

The statute governing prosecutions in this character of cases is a wise and beneficient one, but it is capable of being made an instrument of intolerable oppression. It is a criminal statute, and we cannot by implication extend its provisions to include every case where a father fails to support children. There is no inflexible rule to govern all cases, but each must depend upon the facts as they exist. We are of the opinion that the State failed to carry the burden placed upon it by the law, and to show, by the facts and circumstances in this case, that the failure, neglect, or refusal of this defendant to provide the necessary food, clothing, or lodging for his infant child was "without good cause." Therefore, the Commissioner recommends that the judgment be reversed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the court of criminal correction is accordingly reversed. *Allen, P. J.,* and *Becker, J.,* concur; *Daues, J.,* dissents.

DAUES, J. (dissenting).—I concur in the majority opinion in so far as same holds that the case of State v. Thornton, 232 Mo. 229, 134 S. W. 519, is not controlling upon this court in the case now before us, and agree with the reasoning of our learned Commissioner in distinguishing that case from the case at bar. I dissent, however, from the result reached above for the reason that I cannot escape the conclusion that the State showed facts and circumstances which sufficiently negatived the presence of ''good cause'' for the defendant's failure to furnish necessary food and clothing for his infant child. I am left therefore with the opinion that the judgment of conviction should be affirmed.