THE STATE v. CLEO CAMPBELL, Appellant,—22 S. W. (2d) 645.

Division Two, December 11, 1929.

*Jayne, Jayne & Jayne* and *Charles Hiller*, for appellant.

250

*Stratton Shartel,* Attorney-General, and *Ray Weightman,* Assistant Attorney-General, for respondent.

. HENWOOD, C.—By an information filed in the Circuit Court of Schuyler County, the defendant was charged with the seduction, under promise of marriage, of an unmarried female of good repute and under twenty-one years of age. The venue was changed to the Circuit Court of Clark County, where he was convicted and his punishment fixed at imprisonment in the penitentiary for two years. Fol-

lowing judgment and sentence in accordance with the verdict, he was allowed an appeal to this court.

According to the testimony of the prosecutrix, Lillie Maud Williams, she was seventeen years of age at the time of the alleged offense. Her name had always been Lillie Maud Williams. Her father was dead. She lived with her mother, Mrs. Mollie Williams, near Queen City, in Schuyler County. She first met the defendant in Memphis, Missouri, in the early part of May, 1926, and from that time, until about the middle of August, 1926, he frequently came to her home, near Queen City, to see her, and they were together frequently on automobile trips in that vicinity. At first, he treated her "as a gentleman should treat a lady," but, after awhile, he asked her to have sexual intercourse with him. At that time, she refused to do so and told him she "wasn't that kind of a girl." Later, she yielded to his solicitation to have sexual intercourse with him, because he told her he loved her and promised to marry her in the following September, and because she loved him and believed he would keep his promise. This happened in the afternoon of July 4, 1926, on a "by-road" between Downing and Lancaster, in Schuyler County. "Along the middle of August, 1926, around the 15th somewhere," she had sexual intercourse with the defendant twice during the same evening, because of his promise and assurance that they "would soon be married." Their first act of sexual intercourse on that occasion occurred along the road between Downing and Lancaster, in Schuyler County, and the second along the road about one mile from her home, in Schuyler County. She was never with the defendant thereafter. On the last Sunday afternoon in August, 1926, he came to her home to see her, but she was not there. During the summer she did "some quilting" and made a dresser scarf, in preparation for her marriage, and asked her mother to buy her wedding dress. About the first of September, 1926, she discovered that she was "in the family way," and immediately wrote and mailed a letter to the defendant, in which she advised him of her condition and asked him to come to her and keep his promise. She received no reply to that letter and the defendant never offered to keep his promise. She and the defendant exchanged letters, both before and after that time. She gave birth to a child on May 19, 1927. The defendant is the father of her child. She never had sexual intercourse with any other man.

The story of the prosecutrix was corroborated, in part, by her mother, who testified that the defendant "kept company" with her daughter "all summer," in 1926, and that, during the defendant's courtship of her daughter, her daughter "made dresser scarfs, stand table cover, quilts, top for one comfort, and she got some dishes as

I could give her the money.'' She further testified that her daughter ''wanted money to get a dress,'' made of blue silk and white lace.

The constable, who arrested the defendant, testified that the defendant ''didn't deny doing business with her [the prosecutrix], but said it wasn't his kid.''

The State also offered proof of the good reputation of the prosecutrix, for virtue and chastity.

The defendant, testifying in his own behalf, said that he lived in Memphis, Missouri, and was twenty-three years of age in November, 1927; that he met the prosecutrix in Memphis, Missouri, on May 8, 1926, and between that time and July 11, 1926, was with her on various occasions, but never, at any time, promised to marry her; that, after July 11, 1926, he never saw her again until the day of his preliminary hearing, in June, 1927; that, on July 25, 1926, he went to her home to see her, but she was not at home; that he received several letters from the prosecutrix, but none in which she mentioned her condition of pregnancy, nor any promise of any kind on his part. He identified ten letters, which he said were all of the letters he ever received from the prosecutrix, and which were offered in evidence in connection with his testimony. The first of these letters is dated July 26, 1926, and the last May 16, 1927. According to the dates thereof, the other eight letters were written in the months of July and August, 1926, and March, April and May, 1927. One of the letters is signed ''Lillie Williams,'' three of them are signed ''Lillie to Cleo,'' and the other six are signed ''Lillie.'' The letter dated July 26, 1926, among other things, contains the following: ''I am sorry that I was not at home yesterday.'' All of the letters are written in terms of endearment, but nothing is said in any of them concerning the pregnancy of the prosecutrix, nor the alleged promise of the defendant to marry her.

Three witnesses, Mrs. Ed Randall, her daughter Mabel Randall, and her sister Anna Belle Anders, testified that, from August 7th to August 28, 1926, the defendant worked on Mrs. Randall's farm, near Memphis, Missouri, and stayed in the Randall home, on the farm, every night. Mabel Randall and Anna Belle Anders further testified that they were with the defendant every time he was away from the Randall farm during the period mentioned.

Other witnesses testified to the good reputation of the defendant, for peaceful and law-abiding citizenship.

I. The defendant seriously complains of the State's instruction numbered 2, for the reasons hereinafter indicated.

By this instruction, the jury was authorized to convict the defendant, if they found that he seduced the prosecutrix, under or by

promise of marriage, etc., "at any time within three years next before the 27th day of June, 1927," the day on which the information was filed. At the request of the defendant, the court gave the following instruction on the defense of *alibi*:

"The defendant has interposed as a defense what is known in law as an alibi, that is, that even if the offense was committed, as charged, he was at the time of the commission thereof at another and different place than that in which such offense was committed, and, therefore, was not and could not have been the person who committed the same. Now, if the evidence leaves in your minds a reasonable doubt as to his presence at the place where the offense was committed at the time of the commission thereof, you will find him not guilty."

The information charges that the offense was committed on "the 12th day of August," omitting the year. For the purpose of this opinion, August 12, 1926, may be taken as the time intended to be charged, as shown by the complaint and affidavit filed before the justice of the peace. The State's evidence was such as to warrant a finding that the offense was committed, either on July 4, 1926, or about August 15, 1926, the defendant having failed to file a motion to elect. The defendant denied that he was ever with the prosecutrix after July 11, 1926. In this, he was supported by three witnesses, as to the period extending from August 7th to August 28, 1926. The defendant's instruction on the defense of alibi was intended to direct an acquittal, if the jury had a reasonable doubt as to his presence at the time and place of the commission of the offense, *as shown by the State's evidence,* although such is not the exact language of the instruction. Unless so considered, it served no purpose. Given the meaning intended, it was contradicted by the State's instruction numbered 2, which authorized a conviction, if the jury found that the defendant committed the offense, *"at any time within three years next before the 27th day of June, 1927."* Whether these instructions are regarded as contradictory or not, it must be conceded, in view of the issue presented by the evidence, that the State's instruction numbered 2 was confusing and misleading and therefore prejudicial. Similar instructions, under similar circumstances, were held to be prejudicial in State v. Socwell, 318 Mo. 742, 300 S. W. 680; State v. Fellers, 140 Mo. App. 723, 127 S. W. 95; State v. Campbell (Mo. App.), 260 S. W. 542.

II. It will suffice to say that we find no substantial merit in any of the other complaints of the defendant.

Because of the prejudicial error in the State's in-

struction numbered 2, the judgment is reversed and the cause re-manded. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J.,* absent.