**STATE of Missouri, Plaintiff-Respondent,**

v.

**Elden ARNETT, Defendant-Appellant.**

No. 8166.

Springfield Court of Appeals.

Missouri.

Aug. 23, 1963.

Motion for Rehearing or to Transfer to
Supreme Court Denied Sept. 9, 1963.

Robert B. Baker, Ellington, for defendant-appellant.

Geo. F. Addison, Special Prosecutor, Salem, for plaintiff-respondent.

RUARK, Presiding Judge.

The defendant, now appellant, was charged with failing, neglecting, and refusing to provide adequate food, clothing, lodging, and medical attention for his female child, she being under the age of sixteen years, "from and after the 1st day of May, 1960 until the 25th day of April, 1961."[1] A jury found him guilty and assessed his punishment at thirty days in jail and $1,000 fine.

Defendant and his (now former) wife lived near Salem, Missouri. They were divorced March 19, 1960. Before, or in con-

1. See § 559.350, V.A.M.S., as amended Laws 1953, p. 424.

junction with, that decree, defendant and his then wife entered into a property settlement. They also entered into an agreement that defendant would pay $100 per month as support for the child. The provisions of this contract were made a part of the divorce decree.

In order to effect the property settlement, the farm home was sold and a portion of the proceeds was paid to. the wife. It is rather indefinite how much *defendant* received from the sale of this farm home. He testified that he took back a mortgage for $3,000 when the place was sold. At another point in his testimony, he stated, "After I paid her, I had a note for $3,000.-00. After I paid off a note at the bank, I had around $3,000.00, something like that. Q. What did you do with this money you had? A. Well, I lived it up, most of it." So, we are uncertain whether defendant came out of this transaction with something like $3,000 or with that sum *plus* a $3,000 mortgage. Shortly after the divorce decree was entered, defendant acquired (a) a new wife and (b) a new home (title taken by the entirety); and the new wife acquired a new restaurant, in which defendant testified he had no interest. Later on, although the time is not very definite, defendant and his new wife acquired a new automobile (joint title).

These acquisitions kept defendant so busy that he neglected to pay the promised child support. An execution was issued, and in May 1960 defendant paid the sheriff $200. (Defendant says the sheriff threatened him.) He never paid any of the promised support payments thereafter during the period from May 1, 1960, to April 25, 1961, which is the period charged and which we will hereafter refer to simply as "the period."

At the time of the divorce the daughter was in high school. At some time not shown the former wife got a job as a telephone operator in Rolla. We do know that the daughter stayed for a period in Salem and went to school there. (She was in high school at Rolla when this case was tried.) After payment of $200 to the sheriff in May, defendant made no further payments of support money either to the sheriff or to the mother. The evidence does indicate that upon occasions defendant did make gifts to the daughter in the form of dresses or skirts and blouses and sometimes money in amounts up to $5; but whether and (if so) how much of this was given during the period is indefinite. The mother said: "Q. During the period from May of 1960 up through the 25th of April, 1961, did he give her any dresses then or any skirts? A. No, not that I know. She went to him several times for shoes and things and he told her he did not have the money, but she did go to him several times. She went to him on her own and asked for money for clothing." On the other hand, defendant testified he gave the daughter, "I would say it was about around $150.00 during that time, and clothes, I don't know, it would run, maybe, $50.00, maybe a little more." During the period the daughter had pneumonia and evidently some thyroid trouble, and "large" doctor bills were incurred. The mother said that she paid most of them and that defendant paid a total of $33 on these bills. The foregoing seems to be the total amount of support furnished by the father for the daughter during the period involved.

Defendant is a painter by trade. The former wife testified that prior to the divorce he went from one job to another and was employed most of the time. He had been a member of a partnership (defendant and his brother) in a paint store and as painting contractors. Defendant testified, however, that he had disposed of his interest in this partnership long before the divorce. There is no testimony to the contrary. The only work which the state proved the defendant did during the period was that of painting the courthouse. County warrant records show that from October 31, 1960, to March 13, 1961, defendant personally received warrants totaling $557. Warrants totaling $1,008.37 were also issued to Arnett Brothers Paint Company,

but defendant denied having any interest in the concern at that date. The next job concerning which there is any proof was that which involved the painting of a schoolhouse at Summersville, where defendant was engaged for about six weeks. However, that job was undertaken almost at the end of the period here involved. After that the defendant worked on a painting job in St. Louis for about two months.

Defendant testified he was a farmer and painter; that he had been operated on three times (in 1949 or 1950, 1951, and 1959) for fistula and hemorrhoids; that he had a hernia which caused him pain when he worked. His statement as to this physical condition was not substantiated by medical evidence. He testified he did not recall doing any work during the period other than that we have above described. He said he bought his new home in May and paid for it $7500; and he said his present wife traded in her car as a down payment and he gave a mortgage back for $4,000.

A special prosecutor was appointed by the court to try this case. He testified that within a few days after his appointment he asked the defendant to come to his office and talked to him. "I asked him rather than for me to prosecute him, the case against him, under appointment of the Court, that he go ahead and do what he had agreed to do." He testified that defendant answered: "'I won't pay a cent. I will rot in jail first.'"

■ Appellant first raises the question of the constitutionality of Section 559.350, V.A.M.S., as being vague, indefinite, and in violation of due process. If such is a live question, jurisdiction is in the Supreme Court. However, constitutional questions must be raised at the first opportunity which good pleading and orderly procedure will permit. No attempt was made to assert this contention until in the motion for new trial. We think this was not soon enough.[2] Appellant says that the question *obtrudes* itself upon judicial notice with such insistent demand for recognition that consideration of it cannot be escaped. See Strother v. Atchison, T. & S. F. R. Co., 274 Mo. 272, 284, 203 S.W. 207, 211. It did not so obtrude itself far enough upon the appellant's notice to cause him to appeal to the court having jurisdiction of constitutional questions; and we do not feel that we can "obtrude" it upon the Supreme Court.

Appellant's second contention is that the evidence is insufficient to sustain the judgment because (a) there was no showing as to what constituted adequate food, clothing, lodging, and medical attention, and (b) the evidence did not show defendant's ability to provide more than he did.

■ The state is required to prove every constituent element of its case, including both the failure to supply adequate support (without good cause) *and* defendant's ability to do so.[3] But the *inability* to render the support required by law and moral sense must be an inability which is not brought about intentionally and willfully by the parent.[4] In other words, he cannot willfully and voluntarily place himself in a condition whereby he is unable to discharge his legal and moral duty for the purpose of escaping such duty.

■ In determining whether there is sufficient evidence to sustain the verdict, the appellate court does not weigh the evidence or make a choice as to the credibility of

2. City of Frankford v. Davis, Mo.App., 348 S.W.2d 553; State v. Barnes, Mo., 345 S.W.2d 130, 133; State v. Malone, Mo., 301 S.W.2d 750, 757; State v. Griffin, Mo., 339 S.W.2d 803; Sheets v. Thomann, Mo.App., 336 S.W.2d 701, 707.

3. State v. Roseberry, Mo.App., 283 S.W.2d 652; State v. Williams, Mo.App., 349 S.W.2d 375; State v. Akers, Mo.App., 287 S.W.2d 370; State v. Ball, Mo.App., 157 S.W.2d 262; State v. Hagen, Mo.App., 130 S.W.2d 250.

4. State v. Gilligan, Mo.App., 287 S.W. 779; State v. Hobbs, 220 Mo.App. 632, 291 S.W. 184; State v. Mestemacher, Mo.App., 64 S.W.2d 130; State v. Miller, Mo.App., 33 S.W.2d 1063; State v. Florian, Mo.App., 91 S.W.2d 121.

witnesses. Our review is limited to determining whether there was sufficient evidence from which a jury of reasonable men could have found the results so found beyond a reasonable doubt. State v. Earnest, Mo.App., 162 S.W.2d 338. And in making such determination we must assume as true all competent evidence, and reasonable inferences to be drawn therefrom, which support the verdict. State v. Roseberry, supra, Mo.App., 283 S.W.2d 652, 656. In proving its case, especially as to those matters which involve proof of negative facts, the state may establish the violation by circumstantial evidence (State v. Hobbs, supra, 220 Mo.App. 632, 291 S.W. 184, 186; State v. Williams, 136 Mo.App. 304, 116 S.W. 1128, 1129) or by proof of facts from which guilt may reasonably be inferred. State v. Stoughton, Mo.App., 189 S.W. 601; see State v. Hartman, Mo.App., 259 S.W. 513.

Some of the common definitions of "adequate" are "commensurate in fitness; sufficient; suitable" (Shorter Oxford English Dictionary); "equal to or sufficient for some specific requirement; proportionate, or correspondent; fully sufficient; legally sufficient, such as is lawfully and reasonably sufficient" (Webster's New International Dictionary, Second Edition); "equal to what is required; suitable to the case or occasion; fully sufficient; proportionate, as an *adequate* supply of food" (Funk & Wagnalls New Standard Dictionary of the English Language).

In those cases which have had occasion to construe the similar statutes it has been held that adequate support means personal support, maintenance, food, clothing, et cetera, reasonably suitable to the condition in life and commensurate with the defendant's ability. State v. Clark, 234 N.C. 192, 66 S.E.2d 669; Szilagyi v. Szilagyi, 170 Misc. 1009, 11 N.Y.S.2d 469, 472; People v. Rogers, Co.Ct., 37 N.Y.S.2d 254; 2 Words and Phrases, "Adequate" p. 544; and "Adequate Support" p. 583.

■ After the sheriff's levy in May, the total contributions of the defendant to the support of his child for the year ending April 25, 1961, in gifts of cash and clothing and contributions to medical expense, was not to exceed $250 at the most, and that figure assumes the truth or correctness of some of defendant's estimates of the amounts (the jury were the judges of his credibility) and ignores the testimony of the state's witness, the mother, that she did not know of any gifts of clothing during the period. The whole circumstances show that the daughter was in high school and that she also suffered from some physical infirmity which required medical attention. Whether, by these gifts and contributions, the defendant supplied "adequate support" was a question of fact. We think the fact that the defendant had shortly before agreed to supply the sum of $100 per month is some evidence (although we do not consider it as conclusive) as to what defendant himself considered to be adequate support. We conclude there was sufficient evidence upon which the jury could have found that what the defendant supplied was not adequate.

■ Turning now to the contention in regard to defendant's ability. It appears that he received and had at least the sum of $3,000 at the very time when he was delinquent in his agreed support payments. There is evidence that he received during the winter of 1960–1961, on one job, at least $557 ($80 in October 1960 and $477 in the period from February 1, 1960, to March 13, 1961). While he *said* that he was unable to work without pain and he suffered from an old disability, his former wife testified that he worked regularly beforehand. His evidence as to his disability was not confirmed by any medical evidence, and the evidence does show that about the end of the period involved he had undertaken the job of painting a schoolhouse in Summersville; and shortly thereafter he went to St. Louis, where he worked for about two months. In other words, he seemed to be able to work both at the beginning and end of the period.

Returning to the $3,000 which defendant says he "lived up." Under the circum-

stances, we are of the opinion that the jury could have believed that he lived it up by buying a new home for the new wife. He was able later, at some time which the transcript does not show, to acquire a late-model automobile. Finally, there is the declaration which he made to the special prosecutor, "I won't pay a cent. I will rot in jail first."

We think, as a result of surveying the whole evidence and all the circumstances, there was sufficient evidence from which the jury could have found (either or both) that defendant was not unable to supply support in excess of what he contends he did supply; or that, if he was so unable, his inability was a result of willfully placing himself in such a condition that he was financially unable to do so, for the purpose of avoiding his legal and moral liability.

Another of appellant's contentions is that, since defendant had contracted with his former wife for support of the child and such contract had been incorporated in the divorce decree, and since the former wife had performed the contract by supporting the child, he is not to be charged. He refers of course to the agreement to pay $100 per month for support of the child—with which he himself did not comply. He says the former wife has an "adequate remedy" for collection of the judgment; but he does not suggest how that remedy shall be pursued or made effective.

The former wife is not a party to this case. This is a criminal proceeding brought by the State of Missouri under a statute which has as its foundation the object of securing to children from their parent the discharge of the duty of support, and the punishment of those who are so morally bankrupt as to refuse or ignore that obligation. A short answer to defendant's contention is that the father's duty to support is imposed by law and cannot be bargained away (State ex rel. Whatley v. Mueller, Mo.App., 288 S.W.2d 405, 411), and a father cannot shift his legal and inmate obligation to support his child simply by entering into *contract* with another. Messmer v. Messmer, Mo.App., 222 S.W.2d 521, 524; In re Adoption of P. J. K., Mo. App., 359 S.W.2d 360, 365; Roberts v. Roberts, Mo.App., 292 S.W.2d 596 and cases at p. 599. Had he actually supplied the support to the person having custody, it would be a different matter. Here he seeks escape simply because of the device of contracting and not performing.

The final contention is that the state's Instruction No. 1 is in conflict with the information, in that the information charges that the defendant willfully and unlawfully and without good cause did fail and neglect and refuse to provide adequate support, et cetera, *from and after the 1st day of May, 1960, until the 25th day of April, 1961;* whereas the instruction submits the period involved as *"between the 1st day of May, 1960 and the 25th day of April, 1961."* It is argued that this permitted the jury to pick out any shorter period of time *between* the two dates, less than the entire period charged, and convict the defendant if he failed to render adequate support for the shorter period.

The parties, both state and defendant, tried the case on the theory the whole period was involved. Neither state nor defendant attempted to isolate, pick out, or emphasize any particular time except the whole period extending from May 1, 1960, to April 25, 1961. We think the jury was not misled and the defendant was not prejudiced. See State v. Roseberry, supra, 283 S.W.2d 652. But, even if the jury should have interpreted the instruction to authorize a conviction for failure to support during only a part of the period, we think it would, nevertheless, have been good. The offense of failure to support is a *continuing* one (Miller v. Gerk, Mo.App., 27 S.W.2d 444), and failure to support for only a *part* of the period would have, nevertheless, justified a conviction. Except when time is of the essence (State v. Taylor, 345 Mo. 325, 133 S.W.2d 336 [10]), an instruction which submits the happening of the

violation at any time within the limitation period is not error. State v. Evans, Mo. App., 83 S.W.2d 218; State v. Dowell, 331 Mo. 1060, 55 S.W.2d 975; State v. Monsees, Mo.App., 281 S.W. 62; see State v. Hartman, supra, Mo.App., 259 S.W. 513. Nor is appellant in position to complain because the instruction submitted a lesser *quantum* or amount than the charge and the evidence justified. State v. Pippey, 335 Mo. 121, 71 S.W.2d 719. One who is accused of stealing a fat hog should not be permitted to complain because the hog was lean.

The judgment is affirmed.

STONE and HOGAN, JJ., concur.