STATE of Missouri, Respondent,

v.

Theodore Roosevelt DAVIS, Jr., Appellant.

No. WD 34553.

Missouri Court of Appeals, Western District.

June 5, 1984.

As Modified July 31, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied July 31, 1984.

Theodore M. Kranitz, St. Joseph, for appellant.

Michael A. Insco, Dean A. Davidson, St. Joseph, for respondent.

Before SHANGLER, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The defendant appeals a jury conviction for criminal nonsupport of his minor son, a Class A misdemeanor, § 568.040 RSMo 1978,[1] and his sentence of one year imprisonment in the county jail. The state had charged him with the Class A misdemeanor of knowingly failing to provide, without good cause, adequate food, clothing, lodging, medical and surgical attention for his minor son, and the Class D felony of leaving the state for the purpose of avoiding the obligation to provide such support. The jury found him guilty only of the misdemeanor charge.

The facts consistent with the jury's verdict, disregarding the appellant's evidence except that supporting the conviction, are as follows. Appellant Theodore Roosevelt Davis, Jr. was married to Christina Davis until their divorce in July of 1981. Custody of their minor son, Cory Ted Davis, was awarded to Mrs. Davis, and Mr. Davis ordered to pay weekly child support of $47. Mr. Davis provided support for his son until his divorce became finalized, at which time the payments stopped. During the

---

1. Statutory references are to RSMo 1978 unless otherwise indicated.

divorce proceedings, he had warned his wife outside the courtroom that she would be sorry and he would be sure she never got a penny out of any settlement of the divorce, or get any child support. He further threatened to get a pickup or trailer and travel around without a permanent address so that he could not be found. Mr. Davis testified that the court's division of property and custody award had angered and upset him.

Between September, 1981 and June, 1982, *i.e.* the time between the divorce decree and Mr. Davis' arrest on the charges for which he stood trial, he failed to pay any child support either directly to his wife or through the circuit court. After September 19, 1981, Mrs. Davis received Aid to Families with Dependent Children. As a result, the Missouri Division of Family Services was enforcing the child support order as reimbursement for the payments it made to Mrs. Davis. In addition to not paying the court-ordered support, Mr. Davis failed to provide any food, clothing, lodging, or medical or surgical attention for his son. He also cancelled his son's policy of medical insurance.

Within a few days of the award of marital property, custody, and child support to Christina Davis, Mr. Davis transferred assets in excess of $186,000 held in local St. Joseph bank accounts to Kingsville, Texas. The transfer of assets resulted in substantial early withdrawal penalties. The appellant claimed that higher interest rates more than compensated for the withdrawal penalties. He also admitted the higher interest rates were available at the local banks as well as in Texas.

On several occasions after the dissolution Mrs. Davis attempted but was unable to contact her former husband by telephone at his St. Joseph address concerning matters that arose about their son. Mr. Davis claimed his residence remained in St. Joseph, although he also admitted traveling to Texas in a trailer and staying at a mobile home park in Kingsville, Texas for a period of time in late 1981.

*After* Mr. Davis' arrest he paid all of the back child support, and then together with his attorney executed a trust agreement which provided that child support be paid for the benefit of Cory Ted Davis until he reached age 21 or otherwise was emancipated. Paragraph 2(e) of the trust instrument stated that the trust would fail upon the trustee's receipt of proper notice of a final judgment of conviction against Mr. Davis for the crime of nonsupport. In the event of a court challenge to the legality of the paragraph 2(e) the trust would fail and the trustee American National Bank would make payment to his two emancipated sons from an earlier marriage of all amounts in the trust. Litigation concerning the trust spawned an appeal, consolidated with this case and handed down concurrently. See 672 S.W.2d 182 (Mo.App.1984).

The jury found Mr. Davis guilty of the charge of non-support without making a finding that he left the state of Missouri for the purpose of avoiding the obligation to support his minor son (essential to the felony charge). The trial judge imposed the jury's sentence of one year imprisonment in the county jail for the misdemeanor conviction.

I.

Appellant's ten points will not be considered in the same order presented in his brief. The first three points addressed by this opinion revolve around his argument that the criminal nonsupport statute, § 568.040, RSMo requires evidence that the minor child was actually in need of food, clothing, lodging and medical or surgical attention. He first argues the court erred in failing to direct a verdict on his behalf because no evidence of actual need was presented, nor did the state establish "the quantum of support which would be adequate in the circumstances of Cory Ted Davis and his station in life...."

In pertinent parts § 568.040 states:

1. * * * [A] parent commits the crime of nonsupport if such parent knowingly fails to provide, without good cause, adequate support which such parent is legal-

ly obligated to provide for his minor child or his stepchild.

2. For purposes of this section:

(1) "Support" means food, clothing, lodging, and medical or surgical attention;

\* \* \* \* \* \*

4. Criminal nonsupport is a class A misdemeanor, unless the actor leaves the state for the purpose of avoiding his obligation to support, in which case it is a class D felony.

The present criminal nonsupport statute has a long history of transformations and amendments.[2] The earliest statutes made it a crime for "any man ... [to] fail, neglect, or refuse to maintain and provide" for his children "born in or legitimatized by lawful wedlock...." Rev.Stat.1899 § 1861. The legislature began to refine the language of the statute by amendment in 1909, making it a crime for a mother or father to refuse or neglect to provide "necessary food, clothing or lodging" for legitimate or adopted children, or children under their legal care and control. Rev.Stat.1909 § 4492, amended Laws 1909, p. 450. The adjective "necessary" continued to appear before the phrase "food, clothing or lodging" in later versions of the nonsupport statute. *See* Rev.Stat.1919 § 3273; Rev. Stat.1929 § 4026; Rev.Stat.1939 § 4420. In *State v. Thornton*, 232 Mo. 298, 134 S.W. 519 (1911), the defendant raised the defense to his conviction under R.S.1909 § 4492 that although he provided no support, his children were "well taken care of" and supplied by the wife's father with "all necessary food, clothing and lodging." In

overturning the conviction, the court reasoned:

The statute penalizes the refusal of the father to supply necessary food, etc. Under the law pertaining to necessaries, a necessary article is one which the party actually needs. It is not enough to show that the article is per se classed as necessary, such as food and clothing. It must also be actually needed at the time.

134 S.W. at 520. The courts reasoned that through the criminal statute, the legislature intended only to secure proper care for infants rather than impose punishment for failure to perform parental duties. *Id.* at 521. No punishment would result where the child received support, irrespective of its source. Construction of § 4492 was that it denounced a penalty for failure to supply an infant, "with such food, clothing, and lodging as it actually need." *Id. State v. Vogel*, 51 S.W.2d 123, 124 (Mo.App.1932); *State v. Winterbauer*, 318 Mo. 693, 300 S.W. 1071, 1072 (1927); *State v. Russell*, 102 S.W.2d 727, 728 (Mo.App.1937); *State v. Hartman*, 259 S.W. 513, 514 (Mo.App. 1924); *State v. Ball*, 157 S.W.2d 262, 263 (Mo.App.1942).

Two changes relevant to the issue first appeared in the nonsupport statute codified as § 559.350 RSMo 1949.[3] Only the first change has survived to the present criminal code. First, the legislature replaced the adjective "necessary" with "adequate," and further refined the term "support" to include "adequate food, clothing, lodging, medical or surgical attention." The second change included new language to the effect that conviction would lie whether or not the child actually suffered "physical or material want or destitution...."[4] In *State v.*

---

**2.** Under the present criminal code the crimes of child abandonment and criminal nonsupport are defined by separate statute, in recognition of the separate character of the two offenses. *See* §§ 568.030, 568.040. "The gravaman of nonsupport is failure to provide food, clothing, lodging, or medical attention, the gravaman of abandonment is risking the life or health of the very young." Comment to 1973 Proposed Code, § 568.030 RSMo 1978. In previous versions of the statute the two crimes could be found under one statute. *See, e.g.,* §§ 559.353 and 559.356 RSMo 1969 (separately defining the misdemean-

or and felony offenses of abandonment and nonsupport).

**3.** These same two changes remained in § 559.-350 RSMo 1959 and § 559.353 RSMo 1969.

**4.** Section 559.350 RSMo 1949 provided: "[I]f any man or woman shall, without good cause, abandon or desert or shall without good cause fail, neglect or refuse to provide *adequate* food, clothing, lodging, medical or surgical attention for his or her child or children born in or out of wedlock, under the age of sixteen years, or if

*Osborne,* 413 S.W.2d 571 (Mo.App.1967), the defendant unsuccessfully argued that his conviction for child abandonment under § 559.350 RSMo 1959 could not stand because the state had not produced evidence that the abandoned child actually needed food, clothing or lodging. The court relied upon the express language of the then applicable statute to conclude the legislature intended to avoid the previous line of decisions where "a callous parent could entirely forsake his legal and moral obligations to his child and still be guilty of no criminal offense if the child was adequately cared for by others." 413 S.W.2d at 574. A parent could now be found guilty whether or not the child actually needed any support, as long as the state proved the ability to provide such support. *See State v. Akers,* 287 S.W.2d 370 (Mo.App.1956).

Against this historical backdrop, appellant argues that the legislature intended to resurrect the defense recognized in *Thornton, supra,* and its progeny under prior statutes because the present statute, § 568.040, no longer contains the express language that conviction would lie whether or not the child is in actual need of support.[5]

▇▇▇ The appellant's interpretation of legislative history has some merit but is not persuasive. If possible, the statute's intent should first be ascertained from its plain language. *State ex rel. LeNeve v. Moore,* 408 S.W.2d 47, 49 (Mo.banc 1966). Under § 568.040, the applicable statute, the legislature in positive terms makes it a crime for "a parent" to knowingly fail to provide "adequate" support which "such parent is legally obligated to provide." A parent's legal obligation and duty is to provide support for his or her children. *State v. Arnett,* 370 S.W.2d 169, 174 (Mo. App.1963) (involving a conviction under § 559.350 as amended by Laws 1953, p. 424). This duty is imposed by law and cannot be "bargained away" nor escaped through the "device of contracting and not performing." *Id.* The criminal nonsupport statute "has as its foundation the object of securing to children from their parent the discharge of the duty of support, and the punishment of those who are so morally bankrupt as to refuse or ignore that obligation." *Arnett, supra* at 174. Mr. Davis has never disputed his *obligation* to support his son.

▇▇▇ Had the legislature intended to resurrect the defense now urged by him, it could have chosen some language conveying such an intent. Instead of returning to the adjective "necessary" to describe the support required to be provided by a parent, the adjective "adequate" was left in the statute. The legislature is presumed to know the law that has been amended, and to have used particular words in light of prior judicial and legislative action. *See City of St. Joseph v. Hankinson,* 312 S.W.2d 4, 8 (Mo.1958). Appellant relies upon the legislature's failure to include the prior express language *negativing* the defense he urges. In light of the legislature's retention of the term "adequate" and the statute's expression of a parent's

---

any other person having the legal care or custody of such minor child, shall without good cause, fail, refuse or neglect to provide *adequate* food, clothing, lodging, medical or surgical attention for such child, *whether or not, in either such case such child or children, by reason of such failure, neglect or refusal, shall actually suffer physical or material want or destitution* ... then such person shall be deemed guilty of a misdemeanor...." Section 559.350 RSMo 1959 and Sections 559.353, 559.356 RSMo 1969 contained language similar to the emphasized clause of the statute.

**5.** Appellant claims the fact the statute now applies equally to *both* parents buttresses his argument. He claims it follows that if equal respon-

sibility for a child's support is placed upon both parents, then if one parent is providing adequate support the other cannot be found guilty of nonsupport. Aside from its contrived nature, this argument considerably weakens by the fact that only the modern felony nonsupport offense had previously applied just to men. *See* § 559.-356 RSMo 1969. The modern misdemeanor nonsupport offense had applied *both* to men and women. *See* § 559.353 RSMo 1969; A Manual For Court Related Personnel 13.5. This realization places a more reasonable perspective upon the legislature's actions in correcting its "past mischiefs" than the meaning urged by appellant.

legal obligation of support, the failure to include this prior language can best be interpreted as the avoidance of mere surplusage. In A Manual for Court Related Personnel, *supra,* 13.5 the elements for a criminal nonsupport by a parent are: (1) knowingly fails to provide; (2) without good cause; (3) adequate support; (4) which [s]he is legally obligated to provide ....

■ Appellant's additional prong to his challenge to the sufficiency of the evidence, that the state failed to prove what constituted "adequate" support, also fails. Essentially whether or not the support provided by the accused was adequate is a fact question. *State v. Arnett,* 370 S.W.2d at 173. Here the state proved Mr. Davis didn't provide a penny, but had financial assets well establishing his ability to support his son. In addition the support order provided some evidence of what was "adequate". Point I is denied.

## II.

■ Appellant also claims error in the court's refusal of his tendered converse instruction No. X and definition instruction No. Y incorporating his theory that if the jury did not believe from the evidence beyond a reasonable doubt that his son was in need of food, clothing, lodging, medical or surgical attention, which needs were not being supplied by another at that time, then the jury could only find the defendant innocent of the charge. The trial judge properly refused the tender of Instructions X and Y for the reasons just provided. Only where the tendered converse correctly declares the applicable law will its refusal constitute error. *State v. Pierson,* 610 S.W.2d 86, 92 (Mo.App.1980); *State v. McWilliams,* 331 S.W.2d 610, 613 (Mo. 1960).

## III.

Appellant next (through Point I of his brief) presents a multifaceted attack on the trial judge's sustaining of objections and then interruption of counsel's closing argu-

ment. Counsel for the defendant argued to the jury:

> We have here a man who has provided for his child. A man who has testified to you that he was upset and confused, and understandably so, when that judgment was handed down by Judge Steeb on September 19, 1981. He was a man who was upset, and who never intended not to support his child. Do you have one iota of evidence, ladies and gentlemen, as to whether or not the child was getting adequate support?

After the state's objection was sustained, counsel continued his argument:

> Do you have here one iota of evidence other than that Judge Steeb said he was supposed to pay 47 bucks per week, upon which to base a determination of the finding you must make under Instruction No. 6 'that on October 20, 1981, in the County of Buchanan, State of Missouri, the defendant failed to provide adequate food, clothing, lodging, medical attention, and surgical attention for Cory Ted Davis'? Do you have one iota of evidence to establish that Cory Ted Davis was in need at any time of medical attention?

At this point the judge interposed:

> Mr. Kranitz, that's irrelevant. I sustained an objection to it. I told you before it was irrelevant.

> Disregard that argument, jury. It isn't whether he needed it or not. That's irrelevant. The question is whether or not he provided support.

■ Appellant argues he was prevented from summing up the defense evidence through the court's actions. He further argues the trial judge's latter remarks whereby the jury was told to "disregard that argument" constituted a forbidden comment upon the evidence by the trial judge and also served to modify the verdict director (Instruction No. 6) in violation of MAI–CR 28.02(c) and Rule 28.02(e). These arguments lack merit. The trial judge has a wide latitude of discretion to control the arguments of counsel before the jury. *State v. Armbruster,* 641 S.W.2d 763, 766 (Mo.1982); *State v. Gilbert,* 636 S.W.2d

940, 943 (Mo.banc 1982). Counsel will no doubt be familiar with *State v. Reed*, 640 S.W.2d 188, 196 (Mo.App.1982) holding the court properly advised the jury to disregard a misstatement of law by defense counsel. No impropriety can be found in the court's exercise of its authority to advise the jury to disregard argument directed to evidence previously ruled as irrelevant numerous times during trial. Unlike *State v. Lomack*, 570 S.W.2d 711 (Mo.App. 1978), relied upon by appellant, the judge's remarks were directed to issues of law, not facts. Finally, the judge's use of the term "support" in his remark (which appellant suggests is limited to a civil responsibility enforceable by attachment, garnishment, wage assignment and/or contempt proceedings) did not have the effect of modifying the verdict director or misdirecting the jury. The word "support" specifically appears in the criminal statute, § 568.040, and certainly could be understood by the jury as a term encompassing food, clothing, lodging, medical and surgical attention. This point is denied.

### IV.

 Davis next claims error in the trial court's overruling of a defense motion requiring the state to elect a date upon which the defendant was alleged to have violated the law and also in permitting over objection the introduction of evidence outside the information's time frame. The crime of nonsupport is continuous and a "violation at any time within the limitation period" justifies a conviction. *State v. Arnett, supra*, 370 S.W.2d, at 175. The information charged that Mr. Davis failed to provide adequate support "on or about October 20, 1981." The court's instructions charged the jury to so find. *Compare State v. Taylor*, 345 Mo. 325, 133 S.W.2d 336, 342 (1939) relied upon by appellant. In *Taylor*, the instructions authorized conviction if the jury found attempted corruption of a juror at any time within three years prior to the information's filing. Here the offense is continuous and the instructions did not vary from the information as to the date of the offense. The

state's burden to prove a negative fact (failure to provide) necessarily involved circumstantial proof. *State v. Arnett, supra*, 370 S.W.2d, at 173. Evidence of happenings outside the time frame of the information bore upon the defendant's intent "on or about October 20, 1981." Mr. Davis' statements to his wife in July of 1981 concerning his intention to withhold child support if the outcome of the divorce proceedings was unfavorable, his actions upon learning of the unfavorable divorce decree, and his failure to provide any support up until the time of his arrest all tended to infer that his failure to provide support on the date charged was not the result of oversight but instead was done knowingly and without good cause.

The appellant claims time was the essence of the offense of nonsupport but authority is to the contrary. *See State v. Arnett, supra* at 175. Unlike *State v. Campbell*, 324 Mo. 249, 22 S.W.2d 645 (1929), Mr. Davis offered no alibi offense, inability to pay, or other showing of good cause for the misdemeanor offense for which he was found guilty. He can thus claim no prejudice. *See* Rule 23.11. This point is denied.

### V.

 Appellant next relies upon Rule 27.02(k) and 28.02(f) to claim error in the court's alleged failure to hold an instruction conference. The state claims such a conference was held although not transcribed for the record. It points to instances in the record where the trial judge referred to a previous discussion of proffered instructions. The only harm claimed by Mr. Davis amounts to that "implicit in that action." This point is denied.

### VI.

Appellant next argues that § 568.040 violates due process of law in that it is unconstitutionally vague and overbroad as enacted and as applied because the term "a parent" provides no definite standard by which guilt can be measured. In a sepa-

rate point appellant argues his sentence of one year imprisonment is unconstitutionally disproportionate to the crime of nonsupport.

 Both of the constitutional attacks appear for the first time on this appeal. Parties must raise constitutional issues at the earliest possible opportunity consistent with good pleading and orderly procedure, and further preserve the issue in a motion for new trial. *State v. Danforth*, 654 S.W.2d 912 (Mo.App.1983). Both of these points have not been properly preserved for appeal.

### VII.

 Appellant next claims error in failing to give Instruction No. 8 (MAI–CR 2.60) in its modified form in accordance with Note 5 on Use. Instruction No. 8 read:

You are further instructed that if you find the defendant guilty of non-support as submitted in Instruction No. 8, the Court may, under the law, sentence the defendant to either:

1. Imprisonment for a term fixed by the Court, but not to exceed the term assessed and declared by the jury in its verdict, or

2. The payment of a fine, the amount of which would be determined by the Court in accordance with applicable statutes, or

3. Both such imprisonment and the payment of such a fine.

In your deliberations your duty is to determine whether the defendant is guilty or innocent, and if you find him guilty, to assess and declare the punishment as directed in other instructions given to you.

Note 5 of the MAI–CR 2.60 states in part that when a class A misdemeanor is submitted along with a class D felony, the opening paragraph should reference both the charges as submitted in their respective instructions.

Instruction No. 6 (the verdict director) was patterned after MAI–CR 22.08 and included *both* the misdemeanor and felony charges. The opening paragraph to Instruction No. 8 thus referenced a single instruction containing both charges.

Appellant makes no effort to demonstrate what prejudice resulted from this submission. Rule 28.02(e). The jury obviously was not misled since their verdict differentiated between the two charges and found the defendant guilty of the lesser of the two. This point is denied.

### VIII.

Appellant via a post-judgment motion sought to include language in the judgment that he was found not guilty of the class D felony charge. His concern with any double jeopardy consequences on the felony offense is moot in light of the disposition of this appeal affirming the misdemeanor conviction.

### IX.

 Appellant next claims error in the denial of a post-judgment motion to retax part of the costs. He was not acquitted and therefore § 550.040 does not apply. The point is denied.

### X.

 Appellant's reply brief contains an additional point not raised in its initial brief nor at trial. It would be unfair to consider this point of error without ever having provided respondent the opportunity to counter appellant's accusations. The court does not agree the point of error could not have been discovered and objected to earlier than the writing of its reply brief. This material has not been preserved and is denied.

All appellant's points are denied. The judgment is affirmed.

All concur.