826 S.W.2d 397 (1992)
In re in the Interest of R.A.S.
JUVENILE OFFICER, Plaintiff,
D.S., Natural Mother, Respondent,
v.
D.A., Natural Father, Appellant.
No. WD 44667.
Missouri Court of Appeals, Western District.
March 17, 1992.
*398 Edward Berg, Mid-Missouri Legal Services, Columbia, for appellant.
Timothy C. Brady, Holt, Mays & Brady, Fulton, for respondent.
Before KENNEDY, P.J., and FENNER and BRECKENRIDGE, JJ.
BRECKENRIDGE, Judge.
D.A., the natural father of R.A.S., appeals from an order of the trial court dismissing a petition filed by the juvenile officer seeking the voluntary termination of his parental rights to R.A.S. The trial court found that termination would not be in the best interests of R.A.S. D.A.'s sole point on appeal presents his contention that the trial court acted in error by dismissing the petition, because its finding that termination did not serve R.A.S.'s best interests was against the weight of the evidence and involved an erroneous application of the law. In support of this contention, D.A. ("Father") claims that: (1) had this not been a voluntary termination proceeding there would be sufficient evidence to find abandonment or neglect; (2) the trial court should have considered the circumstances of the child's conception; (3) the public policy of parental support is a weak policy; and (4) the trial court discriminated against Father on the basis of his sex. The judgment of the trial court is affirmed.
On June 23, 1988, the deputy juvenile officer filed a petition for the termination of Father's parental rights to R.A.S. On October 31, 1990, the petition was amended, adding that Father consented to the termination. In the petition it is alleged that the best interests of the child would be served by this termination. A hearing on the matter was held on March 5, 1991. At that hearing testimony was given by Father, D.S. ("Mother") and by Lisa Smith, the deputy juvenile officer.
R.A.S. was born February 28, 1983. Mother was eighteen at the time of R.A.S.'s birth; Father was sixteen. Father claims that he does not remember having sexual relations with Mother, speculating that perhaps he was intoxicated during the only occasion he maintains that such relations could have occurred. Mother claims that she and Father had an ongoing sexual relationship. Although Father does not acknowledge R.A.S. as his child, R.A.S.'s paternity was judicially determined in an earlier action via a series of blood tests.
Father testified that he is unwilling to be a father to R.A.S. He does not intend to visit him or establish any relationship. Father is reluctant to support R.A.S., acknowledging that he would not do so unless forced to by the court. Despite a court order for support, Father has paid only a nominal amount. Mother currently supports R.A.S. on her income, but requires public assistance from food stamps.
Mother testified that she is currently married but in the process of procuring a divorce. Mother has never prevented Father access to R.A.S. Father has not availed himself of the opportunity to have contact with the child. He has never done *399 anything toward developing a relationship with R.A.S.; he has not sent him presents and has never visited with him. Despite this, eight-year-old R.A.S. has emotional ties to Father as a result of his awareness of his parentage. Mother testified that R.A.S. was upset by the court proceedings, but "as long as he isn't exposed to this and we don't talk about it at home, he's fine."
Lisa Smith, the juvenile officer, filed the petition after interviewing Father and Mother. She also reviewed the records of the Division of Family Services. She did not talk to R.A.S., nor did she initiate any further investigation into R.A.S.'s circumstances. She testified that she believed termination was in R.A.S.'s best interests because of the lack of emotional ties and commitment from the father of the child.
The trial court entered its order dismissing the petition, finding that the termination of Father's parental rights was not in the best interests of R.A.S. From this order, Father appeals.
The decision of the trial court must be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. In Interest of B.L.G., 731 S.W.2d 492, 497 (Mo.App.1987). Deference is accorded to the trial court's determination of the credibility of witnesses; evidence, together with all reasonable inferences flowing therefrom, is viewed in the light most favorable to the verdict. Id. at 496-97 (quoting In Interest of B.C.H., 718 S.W.2d 158, 160 (Mo.App.1986)).
Father challenges the trial court's determination that termination was not in R.A.S.'s best interests. He contends that the trial court did not weigh the evidence of the lack of emotional bonding between father and son heavily enough in its decision and has placed too much emphasis on the issue of child support. Father reasons that his rejection of R.A.S. was beginning to adversely affect the child and concludes that the child would be best served by a legal severance of the parental tie. There is no evidentiary basis to support this contention. Further, Father's concern over R.A.S.'s emotional health would appear laudable, but for Father's total lack of care or concern for R.A.S. heretofore demonstrated by his lack of contact with the child. Father's argument is specious and appears a transparent attempt to avoid support.
Section 211.444.1[1] provides that the trial court "may terminate the rights of a parent to a child if it finds that such termination is in the best interests of the child and the parent has consented in writing to the termination of his parental rights." It is the phrase "best interests of the child" that is the subject of dispute between the parties. Father claims that the trial court looked to support alone in making its determination, ignoring other factors such as a good home, good care and emotional bonding. In making this claim, Father points out that the evidence in question would support an involuntary termination, citing In the Interest of W.F.J., 648 S.W.2d 210 (Mo.App.1983), and In Interest of R.L.P., 652 S.W.2d 185 (Mo.App.1983).
Father also claims that the policy of parental support, the policy that provides that parents owe a duty of support to their children, is a weak policy. In support of this claim he cites cases for the proposition that agreements between parents as to past due support may be settled by the parents without resort to the courts. He cites Holt v. Holt, 662 S.W.2d 578 (Mo.App. 1983), and Koenig v. Koenig, 191 S.W.2d 269 (Mo.App.1945). In Koenig, the court upheld as valid an agreement between the parents where mother released father from further obligation to support children under divorce judgment in consideration of his payment of a specified sum. Koenig, 191 S.W.2d at 272. The court did make it clear that the father's underlying duty of support was not compromised; it upheld the contract while recognizing "that the [father] could not, by contract with [the mother], deprive the children from their right to support from him in case the [mother] should fail to fulfill the contract...." Id. Father's citation of Holt is *400 even further afield providing, in opposition to the result reached in Koenig, that compromise of past support is allowable by agreement but parents "may not enter into an agreement to reduce the support which will accrue in the future." Holt, 662 S.W.2d at 580. See also Kastner v. Kastner, 781 S.W.2d 257 (Mo.App.1989); Saeuberlich v. Saeuberlich, 773 S.W.2d 170 (Mo.App.1989).
The cases cited by Father are not germane to the issue in the instant case. This is a voluntary termination proceeding. As such, it is more closely related to B.L.G., 731 S.W.2d at 492, a case in which the adoptive father of a child attempted to voluntarily terminate his parental rights to his adoptive son after the father's divorce from the child's mother. The action was filed by the juvenile officer. Id. at 494. The mother of the child testified that the child was confused over his relationship with his father and that this had caused the child stress. Id. at 495. As in the instant case, the father chose not to see the child although the mother was not prohibiting him from doing so. Id. at 496-97. The juvenile officer who filed the petition did not investigate the child's circumstances. Id. at 495-96. The court stated:
Although § 211.444 requires, in the circumstances here, that the parent, whose parental rights are to be terminated, consent in writing to the termination, it does not permit that parent to file the petition. Consent alone is not sufficient. The petition must be filed by the juvenile officer and the evidence must support a finding that termination is in the best interests of the child.
Although § 211.455.3 excepts, from its requirement of an investigation and social study, cases filed under § 211.444, the juvenile officer who files the petition must act in a role beyond that of a mere tool of a parent whose primary motivation is that of avoiding parental responsibilities. The filing of the petition should be the product of sound discretion based on a reasonable amount of prior investigation. It has long been held that "whoever seeks to invoke the [termination] statute must carry the full burden of proof." In re Interest of W.F.J., 648 S.W.2d 210, 214[6] (Mo.App.1983); D.J.A. v. Smith, 477 S.W.2d 718, 720[2] (Mo. App.1972). Section 211.444 was enacted in 1985, but the part on which the instant proceeding was based was contained in § 211.447 prior to the amendment of that statute in 1985. That part was also found in § 211.441.1(1) RSMo 1959, although the statute required the written consent of the parents.
Richard's testimony, as well as the entire record, demonstrates that this proceeding was initiated and orchestrated by him, through his counsel, for the paramount purpose of relieving him of the financial obligations imposed upon him by the dissolution decree. It need not be decided whether an affirmance of the instant judgment would have the effect desired by Richard. Relieving Richard of those obligations is not in the best interests of Brandon.
Id. at 499.
Other jurisdictions have reached the same result. The Alabama Supreme Court in Ex parte Brooks, 513 So.2d 614, 617 (Ala.1987), addressed the argument that the father's conduct would constitute abandonment under the criteria established under the Alabama Code. The court rejected the argument finding that the termination under review appeared "to be overwhelmingly for the convenience of the parents" and that convenience is not a sufficient reason for terminating parental rights. Id. The Wisconsin Court of Appeals addressed the issue more succinctly commenting that "no parent may blithely walk away from his or her parental responsibilities." In Interest of A.B., 151 Wis.2d 312, 444 N.W.2d 415, 419 (App.1989). The Supreme Court of Iowa also supports a similar result, pointing out that acceptance of the argument "ultimately would open a hatch for a parent to escape his or her duty to support a child." In Interest of D.W.K., 365 N.W.2d 32, 35 (Iowa 1985).
The duty of supporting minor children runs to both parents. Deardorff v. Bohannon, 761 S.W.2d 651, 655 (Mo.App.1988). *401 This duty, far from being a weak policy as asserted by Father, is taken very seriously under Missouri law. Section 568.040, the criminal nonsupport statute, establishes that a parent failing in his or her support duties in providing the basic necessities is guilty of a class A misdemeanor or, depending on the circumstances, a class D felony. The duty of support is one "imposed by law and cannot be `bargained away' nor escaped through the `device of contracting and not performing.'" State v. Davis, 675 S.W.2d 410, 415 (Mo.App. 1984) (quoting State v. Arnett, 370 S.W.2d 169, 174 (Mo.App.1963)). Nor can this duty be avoided in the guise of a voluntary termination proceeding. The termination of parental rights does not merely sever the rights of the parent to the child, but also severs the child's right to the parent. Ideally, R.A.S. deserves a father who provides him with more than the required minimum. That Father is not such a parent is in no way the fault of R.A.S. It is not in R.A.S.'s best interests that the voluntary termination succeed. Nor can Father convincingly point out how termination would alter the emotional turmoil R.A.S. experiences as a result of the attitude of Father.
Father attempts to distinguish B.L.G., 731 S.W.2d at 492, by emphasizing his legal minority at R.A.S.'s conception. He claims that the trial court erred in not considering the circumstances of R.A.S.'s conception, making the statement, "Since [Father] was the victim of a crime the payment of support to [Mother] is improper and her desire is for him to pay support." Father theorizes that since § 566.040 and § 566.050 make sexual intercourse with a minor a crime and since he was fifteen at the time of R.A.S.'s conception, Mother has come to the court with unclean hands. The fallacy evident in this argument is that Mother is not the one to "profit" from any alleged criminal act. The child support ordered by the court in the paternity action was for the benefit of R.A.S., not Mother. R.A.S. is an innocent actor and certainly without complicity in any criminal action which may have been committed.
Finally, Father attempts to make an equal protection argument claiming that because he is a male he was treated differently than a female similarly situated would be treated. In making this argument he cites no constitutional provision, state or federal; no statute; or any case which would be applicable to or forbid the allegedly unequal treatment. To raise a constitutional question properly, the party raising it must specifically designate the provision under which the claimed violation falls. Creamer v. Banholzer, 694 S.W.2d 497, 499 (Mo.App.1985). Father has failed to fulfill this elementary requirement.
Even assuming arguendo that Father properly raised a constitutional violation, he does not cite any evidentiary basis for his claim. It must be noted that Father's indictment of the system is largely dependent upon the illustration of a mother's voluntary termination of her parental rights for the purpose of placing the child for adoption. No adoption of R.A.S. is contemplated. R.A.S. lives with his mother who does not have a spouse with a potential interest in adopting the child. The termination of Father's parental rights would deprive R.A.S. of his future rights to support, affiliation and inheritance without any evidence of a present benefit to R.A.S. resulting from the termination. These circumstances were properly considered by the trial court in its decision that the termination did not serve R.A.S.'s best interests.
The action of the trial court in dismissing the petition for voluntary termination is affirmed.
All concur.
NOTES
[1] All statutory references are to Revised Missouri Statutes 1986, unless otherwise indicated.